IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| PRINCE PAYNE ENTERPRISES, INC., United States for the Use and Benefit of Prince Payne Enterprises, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:18-cv-2552-DCN |
| vs. | ) ) | **ORDER** |
| TIGUA ENTERPRISES, INC. and RESTORATION SPECIALISTS LLC, | ) ) ) | |
| Defendants. | ) ) ) | |

The following matter is before the court on plaintiff Prince Payne Enterprises, Inc.'s ("Prince Payne") motion for default judgment, ECF No. 5, and defendant Tigua Enterprises, Inc.'s ("Tigua") motion to set aside default judgment, ECF No. 8. For the reasons set forth below, the court grants Tigua's motion to set aside default and denies the motion for default judgment as to Tigua and denies without prejudice the motion for default judgment as to defendant Restoration Specialists LLC ("Restoration Specialists").[1] In addition, the court awards attorney's fees and costs to Prince Payne for litigating this issue.

---

[1] At the hearing on the motions, counsel for Prince Payne stated that Restoration Specialists has been dissolved. However, Prince Payne has not requested that the clerk enter default as to Restoration Specialists; therefore, the court cannot grant the motion for default judgment as to Restoration Specialists. See Fed. R. Civ. Pro. 55(a) (requiring that the clerk enter the party's default before the court or the clerk can enter default judgment). Moreover, because Prince Payne seeks a sum certain from Restoration Specialists, it must request that the clerk enter default judgment, not the court. Fed. R. Civ. Pro. 55(b)(1).

1

## I. BACKGROUND

This case arises out of a payment dispute between a contractor and subcontractors. Tigua entered into a contract with the United States Department of State to perform certain operations and maintenance services. Tigua subcontracted with defendant Restoration Specialists LLC ("Restoration Specialists") (collectively with Tigua, "defendants") to perform work at a Department of State site in North Charleston. Restoration Specialists in turn subcontracted portions of this work to Prince Payne. Prince Payne alleges that it performed the work until Restoration Specialists stopped paying Prince Payne's invoices in August 2017, and defendants now owe Prince Payne $50,233.75.

Prince Payne filed this suit on September 17, 2018, alleging a violation of the Miller Act, breach of contract, unjust enrichment, and a violation of South Carolina Unfair Trade Practices Act ("SCUTPA"). Prince Payne served its complaint, summons, and response to interrogatories via certified U.S. mail to defendants. Tigua's documents were addressed to John Kealey, the project manager for Tigua for the Naval Nuclear Power Training Command and the registered agent of Tigua. The certified mail for Tigua was accepted on November 9, 2018.[2] However, the person who accepted the mail, as indicated by the signature of the mail receipt, was Max Jacobs, a person who is not affiliated with Tigua and was probably an employee in the mailroom at the Naval Weapons Station. Tigua explains that its physical address is 2316 Red Bank Road, Building 206, Suite 142, Goose Creek, SC, which is located on the Naval Weapons

---

[2] Prince Payne's motion says that the mail was accepted on September 18, 2018, but the receipt is signed with the date of November 9, 2018. ECF No. 5-2 at 1.

Station and is the address Prince Payne used for service; however, since the Air Force took charge of the Naval Weapons Station, all mail addressed to Tigua is delivered to the Air Force Post Office. Tigua states that sometimes it is not informed that it has mail at the Air Force Post Office until several months after the mail is delivered.

On January 16, 2019, an employee of the Air Force Post Office contacted Mr. Kealey and told him that he had a certified letter addressed to Mr. Kealey. When Mr. Kealey retrieved the letter, he realized what it was a complaint and summons and gave it to Neil Butler, the project manager for Tigua at another project in Charleston, who sent the complaint and summons to Tigua's corporate offices. Tigua then realized Prince Payne filed a motion for default judgment in the case and entered an appearance on January 31, 2019.

The return receipt for Restoration Specialists was returned to Prince Payne as "Moved, Unable to Forward," so Prince Payne served Restoration Specialists through the Secretary of State of South Carolina on November 5, 2018. Restoration Specialists has still not entered an appearance in the case.

Prince Payne filed a motion for default judgment as to both defendants on January 17, 2019. ECF No. 5. On January 31, 2019, Tigua responded to the motion, ECF No. 9, and also filed a motion to set aside default, ECF No. 8. On February 7, 2019, Prince Payne replied to its motion for default judgment, ECF No. 12, and on February 14, 2019, Prince Payne responded to Tigua's motion to set aside default judgment, ECF No. 13. Prince Payne requested entry of default as to Tigua from the clerk on February 26, 2019, ECF No. 14, which the clerk granted on February 27, 2019, ECF No. 15. The court held a hearing on the motions on February 27, 2019.

## II. DISCUSSION

Federal Rule of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). This "good cause" standard is liberally construed "in order to provide relief from the onerous consequences of defaults . . . ." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987); see also Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) ("Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits."). The decision to set aside an entry of default is "committed to the sound discretion of the trial court." Lolatchy, 816 F.2d at 954.

The Fourth Circuit has identified several factors that a court should consider when determining whether to set aside an entry of default: "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204–05 (4th Cir. 2006). When considering these factors, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). Here, Tigua argues that default should be set aside by primarily focusing on its meritorious defenses while also briefly touching on the other factors. In response, Prince

Payne argues that Tigua cannot show good cause for setting aside default because Tigua was properly served via certified mail pursuant to South Carolina's rules of service

The issue here is not whether Tigua was properly served; it is whether Tigua has shown good cause for setting aside the entry of default. Tigua does not seem to contest the propriety of the service. Instead, it argues that pursuant to the factors enumerated by the Fourth Circuit, it can show good cause to set aside the entry of default. Based on these factors, the court agrees that good cause exists to set aside Tigua's default.

### A. Reasonable Promptness

Tigua argues that it acted with reasonable promptness when it became aware of the complaint and summons. When courts consider the reasonable promptness factor, they do so beginning at the time the defaulting party learned of the lawsuit and not necessarily at the time at which it was served. For example, in Colleton Prep. Academy, Inc., the Fourth Circuit found no error in the district court finding that the defaulting party acted promptly when it acted within nine days after its counsel learned about the case, even though the party's agent had been properly served several months before. 616 F.3d at 418. Similarly, courts consider the promptness with which the defaulting party responded to the other party's motion for default judgment. See LM General Ins. v. Frederick, 2019 WL 689570, at *3 (D.S.C. Feb. 19, 2019) (finding defendant acted with reasonable promptness when default was entered on June 29, the plaintiff moved for default judgment on July 23, and the defendant moved to set aside default on August 1); Ashmore v. Melvin, 2016 WL 3610609, at *2 (D.S.C. July 6, 2016) (weighing promptness factor in favor of setting aside entry of default because the defendant promptly responded to the plaintiff's motion for default judgment).

Here, Tigua states that Mr. Kealey learned of the lawsuit on January 16, 2019, and Tigua responded to the motion for default judgment two weeks and one day later from that date. This passage of time is reasonable because once Mr. Kealey learned about the summons and complaint, he had to send the documents to Tigua's corporate offices, which apparently is the point at which Tigua realized for the first time that Prince Payne had moved for default judgment. Moreover, Tigua was able to respond to the motion for default judgment in a timely manner, as the motion was filed on January 17, and Tigua responded within 14 days. Considering these facts, Tigua acted with reasonable promptness.

**B. Personal Responsibility of Defaulting Party**

Tigua argues that it received the complaint and summons late through no fault of its own. However, Prince Payne contends that Tigua is at fault because Prince Payne served the complaint and summons to Tigua's registered agent's address listed with the South Carolina Secretary of State, Tigua regularly received mail at that address, and Tigua should have been more attentive to ensure that it received its mail from the Air Force Post Office.

The Fourth Circuit confronted a case with similar factual issues in Colleton Prep. Academy, Inc. There, the defendant was served via certified mail through service on the defendant's registered agent, a third party. Colleton Prep. Academy, Inc., 616 F.3d at 415. The registered agent then, unbeknownst to the parties, negligently failed to forward the papers to the defendant and instead sent them to another defendant in the case. Id. As a result, the defendant failed to timely answer the complaint, and upon motion by the plaintiff, the clerk entered default against the defendant. Id. at 415–16. In reviewing the

district court's denial of the defendant's motion to vacate the entry of default, the Fourth Circuit held that the district court erred in relying too heavily on these facts and on <u>Park Corp. v. Lexington Ins. Co.</u>, 812 F.2d 894 (4th Cir. 1987). <u>Id.</u> at 420. The court explained while the defaulting party in <u>Park Corp.</u> also learned of the lawsuit against it after it was placed in default, the defaulting party also offered no explanation for why the complaint and summons disappeared and made no showing that internal procedures were designed to avoid the scenario. In that case, the defaulting party had received the complaint and summons in its own mailroom and lost them as a result of mishandling by its employees. In contrast, the court explained, the registered agent for the defendant in <u>Colleton Prep. Academy</u> admitted to its mishandling of process and offered explanation as to why it sent the complaint and summons to the other defendant.

This case falls somewhere in between <u>Park Corp.</u> and <u>Colleton Prep. Academy</u>. The complaint and summons were received by an employee working at the mailroom at the Naval Weapons Station, who somehow sent the documents to the Air Force Post Office. Therefore, the complaint and summons were neither received at Tigua's own mailroom nor were they handled by Tigua's own employees. However, there is no evidence on the record of why there was such a delay in Tigua being notified of the certified mail. No one at the Naval Weapons Station or Air Force Post Office has admitted fault in the handling of the mail. Moreover, Tigua knew generally that it was not immediately notified when it received mail at the Air Force Post Office, and yet it appears that Tigua did not have any sort of procedure to regularly check for mail or prevent any sort of delayed notification. However, based on the other factors discussed

7

here and the Fourth Circuit's strong preference against default, this factor alone is not enough to deny Tigua's motion to set aside default.

### C. Meritorious Defenses

Tigua argues that it has meritorious defenses for each cause of action, and Prince Payne simply responds by stating that it will address the defenses in future filings if necessary instead of substantively responding to each. Tigua has made strong arguments about its defenses. As for the Miller Act claim, Tigua argues it is barred by the statute of limitations. The Miller Act has a one-year statute of limitations that begins on the last day on which work was performed. 40 U.S.C. § 3133(b)(4). According to the complaint, Prince Payne's work ended in August 2017, Comp. ¶ 18, and Prince Payne did not file its complaint until September 2018. Because this amount of time exceeds one year, it is likely that Prince Payne's Miller Act claim will be barred by the statute of limitations.

With regard to the breach of contract claim, Tigua argues that it was not in privity of contract with Prince Payne and therefore cannot be held liable. Tigua explains that it subcontracted with Restoration Specialists, and Restoration Specialists subcontracted with Prince Payne. Indeed, the contracts attached to the complaint confirm that Tigua and Restoration Specialists entered into one contract, and Restoration Specialists and Prince Payne entered a separate contract. Prince Payne is entitled to payment pursuant to its contract with Restoration Specialists, as evinced by § 10.1 of the Restoration Specialists/Prince Payne contract, ECF No. 1-2 at 12, and the invoices submitted by Prince Payne to Restoration Specialists, ECF No. 1-3. "Generally, one not in privity of contract with another cannot maintain an action against him in breach of contract." Bob Hammond Const. Co. v. Banks Const. Co., 440 S.E.2d 890, 891 (S.C. Ct. App. 1994).

Therefore, there is a strong likelihood that Tigua cannot be liable for breach of contract for failure to pay Prince Payne.

As for unjust enrichment, Tigua contends that Prince Payne has not conferred a benefit upon it. The elements to recover for unjust enrichment are "(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." Regions Bank v. Wingard Properties, Inc., 715 S.E.2d 348, 356 (S.C. Ct. App. 2011). Tigua argues that the benefit of Prince Payne's work was realized by the Department of State, the owner of the work site, and Restoration Specialists, who contracted with Prince Payne for services. Moreover, Tigua paid Restoration Specialists in full, meaning that Tigua has not retained a benefit for which it has not paid its value. In a somewhat similar situation, "[c]ourts addressing a claim of unjust enrichment by a subcontractor against a property owner have typically denied recovery where the owner in fact paid on its contract with the general contractor." Williams Carpet Contractors, Inc. v. Skelly, 734 S.E.2d 177, 180 (S.C. Ct. App. 2012). While that is not the exact scenario here, as Tigua is a general contractor, not a property owner, Tigua paid its subcontractor, Restoration Specialists, the full amount it was owed. In other words, payment in the first contractual tier–whether it be owner to contractor or contractor to subcontractor–is fulfilled. As a result, a party in the second contractual tier, i.e., Prince Payne, cannot seek payment from the first-tier party who has already paid in full.

Finally, with regard to the SCUTPA claim, Tigua makes a convincing argument that Prince Payne has not properly pleaded any unfair or deceptive act by Tigua or

9

properly alleged an impact on public interest. The elements of a SCUTPA claim are "(1) [ ] the defendant engaged in an unlawful trade practice, (2) [ ] the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) [ ] the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." SIB Dev. & Consulting, Inc. v. Save Mart Supermarkets, 271 F. Supp. 3d 832, 833 (D.S.C. 2017). "Because only unfair acts that adversely affect the public interest give rise to liability under the SCUTPA, a deliberate or intentional breach of contract, without more, does not constitute a violation of the SCUTPA." Bessinger v. Food Lion, Inc., 305 F. Supp. 2d 574, 581 (D.S.C. 2003), aff'd sub nom. Bessinger v. Food Lion, LLC, 115 F. App'x 636 (4th Cir. 2004). The unlawful trade practice alleged by Prince Payne is defendants' failure to pay Prince Payne, which would be a deliberate breach of contract between Prince Payne and Restoration Specialists. As for the public interest, Prince Payne does allege that defendants' actions have the potential for repetition, Comp. ¶ 44, which can be used to show an impact on public interest, Singleton v. Stokes Motors, Inc., 595 S.E.2d 461, 466 (S.C. 2004). However, the potential for repetition must be demonstrated by (1) showing that the same type of acts occurred in the past; or (2) showing the defendant's procedures create the potential for repetition of unfair acts. Id. As Tigua indicates, there are no facts alleged in the complaint to support either of these requirements. Therefore, Tigua likely has a meritorious defense to the SCUTPA claim.

**D. Other Factors**

The other three factors also weigh in favor of Tigua. There is no history of Tigua engaging in dilatory action, and less drastic sanctions are available to Prince Payne, such

as the award of attorney's fees and costs for litigating this issue.  See Fidrych v. Marriott Int'l, Inc., 2017 WL 5889204, at *3 (D.S.C. Nov. 29, 2017) ("Although no alternative sanctions have been suggested by the parties, the Fourth Circuit has looked approvingly on an award of attorney's fees and costs to the party opposing the motion to set aside the entry of default.").  As for prejudice to Prince Payne, "delay in and of itself does not constitute prejudice to the opposing party." Colleton Prep. Academy, 616 F.3d at 418.  Prince Payne has not alleged any prejudice, and the court sees none.  Considering all of the factors, the court finds that the factors weigh in favor of granting Tigua's motion to set aside default.  This necessarily results in the court denying Prince Payne's motion for default judgment as to Tigua.

Because the court finds that less drastic sanctions are available here, the court orders Tigua to pay Prince Payne's attorney's fees and costs for litigating the issue of default judgment.  See H & C Corp. v. Puka Creations, LLC, 2012 WL 5610114, at *1 (D.S.C. Nov. 15, 2012) ("The Court finds that Defendants should pay Plaintiff's attorney's fees and costs in responding to the defendants' motion to set aside default and in preparing its motion for default judgment and reply.  The Court finds that the payment of fees and costs is equitable under the circumstances and is less drastic than a default judgment."); Washington v. Charles City Med. Grp., Inc., 2011 WL 2181673, at *2 (E.D. Va. June 3, 2011) (awarding attorney's fees and costs to plaintiff in connection with seeking entry of default even though the court granted the motion to set aside default).  The court orders Prince Payne to submit an affidavit with its attorney's fees and costs related to its motion for default judgment and reply, its response to Tigua's motion to set aside default, and the hearing on the motions within 15 days of this order.

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS the motion to set aside default, DENIES the motion for default judgment as to Tigua, and DENIES without prejudice the motion as to Restoration Specialists. In addition, the court awards attorney's fees and costs to Prince Payne for litigating this issue.

**AND IT IS SO ORDERED.**

                                      **DAVID C. NORTON**
                                      **UNITED STATES DISTRICT JUDGE**

**March 6, 2019**
**Charleston, South Carolina**