IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| PRINCE PAYNE ENTERPRISES, INC., ) <br> United States for the Use and Benefit of ) <br> Prince Payne Enterprises, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> TIGUA ENTERPRISES, INC. and ) <br> RESTORATION SPECIALISTS LLC, ) <br> ) <br> Defendants. ) <br> _____) | No. 2:18-cv-2552-DCN <br><br> **ORDER** |

The following matter is before the court on defendant Tigua Enterprises, Inc.'s ("Tigua") motion to dismiss, ECF No. 27. For the reasons set forth below, the court grants the motion but permits plaintiff Prince Payne Enterprises ("Prince Payne") to file an amended complaint in accordance with this order within 14 days of this order.

## I. BACKGROUND

This case arises out of a payment dispute. Tigua entered into a contract with the United States Department of State to perform certain operations and maintenance services. Tigua subcontracted with defendant Restoration Specialists LLC ("Restoration Specialists") (collectively with Tigua, "defendants") to perform work at a Department of State site in North Charleston. Restoration Specialists in turn subcontracted portions of work to Prince Payne. Prince Payne alleges that it performed the work until Restoration Specialists stopped paying Prince Payne's invoices in August 2017, and defendants now owe Prince Payne $50,233.75.

1

Prince Payne filed a complaint on September 17, 2018 bringing causes of action for a violation of the Miller Act, breach of contract, unjust enrichment, and a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). After neither defendant entered an appearance in the case, Prince Payne filed a motion for default judgment as to both defendants on January 17, 2019. ECF No. 5. On January 31, 2019, Tigua responded to the motion, ECF No. 9, and also filed a motion to set aside default, ECF No. 8. Restoration Specialists did not enter an appearance or respond to Prince Payne's motion. The court denied the motion for default judgment as to Tigua, granted Tigua's motion to set aside default, and denied the motion for default judgment as to Restoration Specialists without prejudice so that the clerk could first enter default for Restoration Specialists. The clerk then entered default as to Restoration Specialists, and the court granted default judgment in the amount of $50,632.75 on April 24, 2019. ECF No. 23.

On July 16, 2019, Tigua filed its motion to dismiss. ECF No. 27. On July 17, 2019, Prince Payne filed a request for entry of default as to Tigua, ECF No. 30, which the clerk denied due to the pending responsive pleading, ECF No. 31. Prince Payne then filed a response to the motion to dismiss on July 30, 2019. ECF No. 32. Tigua replied on August 6, 2019. ECF No. 34. The court held a hearing on the motion on October 15, 2019. The motion is ripe for review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . .

does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

Before diving into the substance of Tigua's motion to dismiss, the court must first address a procedural argument made by Prince Payne. In response to the motion to dismiss, Prince Payne argues that Tigua's motion is untimely, and as such, default judgment against Tigua is warranted. Pursuant to Rule 12 of the Federal Rules of Civil Procedure, a defendant must file an answer or responsive pleading within 21 days of service of the complaint, and if a defendant files a 12(b)(6) motion, he must do so prior to filing a responsive pleading. The complaint was delivered via certified mail to the mail

room located at Tigua's physical address on November 9, 2018, where the mail was accepted by an employee of the mailroom who is not affiliated with Tigua. Due to some address and mail delivery issues, Tigua did not learn of the complaint and summons until January 2019 and did not enter an appearance in this case until January 31, 2019. At that point, Tigua did not file an answer or motion to dismiss but instead filed a motion to set aside default judgment and a response to Prince Payne's pending motion for default judgment.

The court issued its order denying default judgment as to Tigua on March 6, 2019. The order did not specify a date by when Tigua needed to file an answer or a responsive pleading. The court then entered a scheduling order on April 1, 2019. Tigua did not file its motion to dismiss until three months later on July 16, 2019. Prince Payne argues that Tigua clearly had notice of the complaint on January 31, when counsel filed a notice of appearance in this case, and Prince Payne did not file an answer or a motion to dismiss within 21 days. Prince Payne also contends that, to the extent Tigua argues that Tigua's deadline was tolled by the court's consideration of default judgment, Tigua still did not file an answer or motion to dismiss within 21 days of the court's order. Prince Payne argues that it is prejudiced by Tigua's late filing because, per the scheduling order, the deadline for motions to amend the pleadings was June 3, 2019, and because Tigua did not file its motion to dismiss until July 16, Prince Payne lost the right to amend its complaint as a matter of course. As such, Prince Payne argues that Tigua should be held in default for filing its motion "grossly out of time."

At the hearing on the motion, Tigua's counsel explained that he waited to file Tigua's motion to dismiss because at the February 27, 2019 default judgment hearing in

4

this case, counsel for Prince Payne informed counsel for Tigua that she planned to file an amended complaint. Tigua did not want to waste the court's resources by filing a motion to dismiss a complaint that was going to be amended, so Tigua planned to wait to file its motion to dismiss until Prince Payne filed its amended complaint. However, the deadline for motions to amend pleadings passed without Prince Payne seeking leave to amend its complaint, and Tigua subsequently filed its motion to dismiss.

At the hearing, Prince Payne's counsel agreed that she told Tigua's counsel that she planned to amend the complaint; however, she explained that she was waiting for Tigua to first file a motion to dismiss so that she could fix the deficiencies that Tigua raised in its motion. She continued to stress the procedural order that a plaintiff files a complaint, a defendant files a motion to dismiss, and then the plaintiff amends the complaint as a matter of course based on the arguments in the motion to dismiss. Whether it is a wise use of the parties' and the court's time and resources to rely on a motion to dismiss to alert a plaintiff's counsel to legal deficiencies with the complaint, as opposed to ensuring that the complaint is legally sufficient when it is originally filed, is questionable. Nevertheless, Prince Payne's counsel's reliance on this procedure here is unconvincing because in the briefing on Tigua's motion to set aside default, Tigua provided its arguments about the complaint's deficiencies when arguing that Tigua had meritorious defenses that warranted the court setting aside the default. Indeed, the arguments in Tigua's motion to dismiss appears to be nearly, if not completely, identical to the arguments in Tigua's motion to set aside default.

In light of this information, the court declines to deny Tigua's motion to dismiss as untimely and grant default judgment. The court finds that it was reasonable for

5

Tigua's counsel to rely on Prince Payne's counsel's representation that she planned to amend the complaint, especially in light of the fact that Prince Payne was privy to a preview of Tigua's motion to dismiss during the briefing on the motion to set aside default judgment. Therefore, the court now considers the merits of Tigua's motion to dismiss.

Tigua argues in its motion that Prince Payne's claims in its original complaint are legally insufficient. Prince Payne responds by explaining that it has cured the deficiencies discussed in Tigua's motion in its proposed amended complaint, which is attached to Prince Payne's response and for which Prince Payne seeks leave from the court to file. In reply, Tigua argues that Prince Payne's proposed amended complaint is still deficient, making amendment futile. The court finds that Prince Payne's claim for a violation of the Miller Act must be dismissed but grants leave for Prince Payne to amend its complaint on that claim. As for Prince Payne's breach of contract, unjust enrichment, and SCUTPA claims, the court finds that dismissal is warranted and denies leave to amend the complaint because doing so would be futile. Finally, the court does not grant leave for Prince Payne to add a fraud claim to its complaint because the claim is not sufficiently alleged in Prince Payne's proposed amended complaint, making amendment futile.

**A. Violation of the Miller Act**

Tigua argues that Prince Payne's original Miller Act claim should be dismissed based on the statute of limitations. The Miller Act has a one-year statute of limitations, requiring a plaintiff to initiate an action no later than a year after the day on which the last labor was performed by the plaintiff. 40 U.S.C. § 3133(b)(4). Prince Payne originally

alleged that its work ended in August of 2017, but Prince Payne did not bring this action until September of 2018, meaning that statute of limitations had expired. As such, Prince Payne's proposed amended complaint alleges that Prince Payne performed work through October 2017, attaching a change work order dated October 3, 2017 to the proposed amended complaint. Prince Payne also newly alleges that it requested payment from Tigua within ninety days of the last completed work, which complies with another requirement to bring suit under the Miller Act. See § 3133(b)(2) ("A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.").

Tigua argues that allowing Prince Payne to amend this claim would be futile because Prince Payne did not submit proper notice of payment within 90 days as required by § 3133(b)(2). Tigua explains that the Miller Act requires that the notice must state with "substantial accuracy the amount claimed" and include "the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed," and that neither of the exhibits that Prince Payne attaches to its proposed amended complaint meet these requirements.

As an initial matter, this language in the Miller Act reads as though the requirements apply to the civil action filed by the plaintiff, not the notice that the plaintiff must send. The subsection first states:

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor

7

> furnishing the payment bond <u>may bring a civil action</u> on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.

§ 3133(b)(2) (emphasis added). It then states that "<u>[t]he action</u> must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." <u>Id.</u> (emphasis added). However, courts have interpreted the legislative history and amendments made to the Miller Act to find that despite the statutory language, these requirements apply to both the notice and the civil action. <u>See</u> <u>Trustees of Heating, Piping & Refrigeration Pension Fund v. Milestone Const. Servs., Inc.</u>, 991 F. Supp. 2d 713, 718 (D. Md. 2014); <u>AMEC Env't & Infrastructure, Inc. v. Structural Assocs., Inc.</u>, 2014 WL 1379519, at *3 (E.D.N.C. Apr. 8, 2014).

Tigua argues that the two instances of notice alleged by Prince Payne, Exhibits F and G to the proposed amended complaint, do not contain sufficient notice. Exhibit G is a letter dated March 29, 2018, which is clearly 90 days beyond the last work performed in October 2017. Exhibit F is a series of emails, most of which are rather vague and none of which mention the amount of payment owed. However, keeping in mind the court's obligation to accept all allegations as true as this stage of litigation, Prince Payne alleges that Prince Payne "demanded payment from [Tigua] several times, and within ninety days of last performing work on the project." Proposed Am. Compl. ¶ 21. While the dates and contents of the attached exhibits may not meet the notice requirements of the Miller Act, the court must accept the allegation that Prince Payne demanded payment from Tigua within ninety days of last performing work as true. Discovery may reveal that this is not true or that none of the communications satisfy the Miller Act's notice

requirements; however, at this early stage of litigation, the court finds that Prince Payne's proposed amended complaint sufficiently alleges a viable cause of action for a violation of the Miller Act. As such, the court grants Tigua's motion to dismiss as to Prince Payne's original Miller Act claim but permits Prince Payne to file its proposed amended complaint's Miller Act claim.

### B. Breach of Contract

Next, Tigua argues that, because Prince Payne entered into a contract with Restoration Specialists and not with Tigua, the breach of contract claim should be dismissed for lack of privity of contract. In response, Prince Payne attached to its proposed amended complaint as Exhibit C a joint check agreement to evidence a contract between Prince Payne, Restoration Specialists, and Tigua. Tigua contends that this still does not cure the deficiency because Tigua did not sign the joint check agreement and because the agreement explicitly states both that "[i]t is expressly agreed and understood by Tigua, Restoration Specialists, and Prince [Payne] that this Agreement does not constitute a guarantee of payment by Tigua to either Restoration Specialists or Prince [Payne]" and "[i]t is understood that this agreement is made solely as a convenience to Prince and does not create any contractual rights between Prince [Payne] and Tigua." ECF No. 32-1 at 32.

The court finds that Prince Payne's original breach of contract claim must be dismissed. The complaint only alleges that Prince Payne contracted with Restoration Specialists. Compl. ¶ 6. There are no allegations that Prince Payne entered into any contract with Tigua. Moreover, the court finds that amendment of this claim would be futile. "Although [motions to amend] should be granted liberally, a district court may

9

deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted); see also Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011) ("Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards."). Here, Prince Payne still fails to state a breach of contract claim in its proposed amended complaint because the contract on which it relies to allege privity of contract explicitly states that the contract does not create any contractual rights between Prince Payne and Tigua. Therefore, the court denies Prince Payne leave to file its proposed amended complaint's breach of contract claim.

### C. Unjust Enrichment

Tigua next argues that Prince Payne does not have a viable claim for unjust enrichment because Tigua never solicited or received goods from Prince Payne from which Tigua received a benefit. Instead, Prince Payne conducted work for Restoration Specialists, and the work benefitted the Department of State. Tigua also explains that it paid Restoration Specialists in full, and that "[c]ourts addressing a claim of unjust enrichment by a subcontractor against a property owner have typically denied recovery where the owner in fact paid on its contract with the general contractor." Williams Carpet Contractors, Inc. v. Skelly, 734 S.E.2d 177, 180 (S.C. Ct. App. 2012) (citations omitted). In response, Prince Payne argues that Tigua did benefit from Prince Payne's work because Tigua received payment from a government contract based on Prince Payne's work, and that Tigua promised payment to Prince Payne through the joint check agreement, citing to Prince Payne's proposed amended complaint.

To state a claim for unjust enrichment, a plaintiff must allege that "(1) he conferred a benefit upon the defendant; (2) the defendant realized that benefit; and (3) retention of the benefit by the defendant under the circumstances make it inequitable for the defendant to retain it without paying its value." Williams Carpet Contractors, Inc.,734 S.E.2d at 180. Tigua relies on Williams Carpet Contractors, which states that "[c]ourts addressing a claim of unjust enrichment by a subcontractor against a property owner have typically denied recovery where the owner in fact paid on its contract with the general contractor." Id. at 180. While Tigua is a contractor, as opposed to a property owner, the court still finds this law to be applicable. Tigua paid Restoration Specialists in full. As such, payment in the first contractual tier–whether it be owner to contractor or contractor to subcontractor–is fulfilled. As a result, a party in the second contractual tier, i.e., Prince Payne, cannot seek payment from the first-tier party who has already paid in full, i.e. Tigua. Prince Payne has failed to set forth any argument as to why this legal principle does not apply here and instead grounds its cause of action on the joint check agreement in its proposed amended complaint in an attempt to sufficiently state a claim. This does not negate the law discussed above nor does it add anything to the claim. Prince Payne contends that the joint check agreement constitutes Tigua's guarantee of payment to Prince Payne, but this directly contradicts the joint check agreement's statement that "[i]t is expressly agreed and understood by Tigua, Restoration Specialists, and Prince [Payne] that this Agreement does not constitute a guarantee of payment." ECF No. 32-1 at 32. Therefore, the court finds that Prince Payne failed to state a claim for unjust enrichment, and the court denies leave to amend this claim, as doing so would be futile.

**D. SCUTPA**

Next, Tigua contends that Prince Payne's SCUTPA claim fails to state a claim because Prince Payne failed to allege unfair trade practices and an impact on public interest. Tigua also explains that this dispute is one between private parties and is beyond the reach of SCUTPA. A SCUTPA claim requires an unfair or deceptive act or practice that has an adverse impact on public interest. S.C. Code Ann. § 39-1-10(b). "An impact on the public interest may be shown if the acts or practices have the potential for repetition." Singleton v. Stokes Motors, Inc., 595 S.E.2d 461, 466 (S.C. 2004). "The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts." Id. In its original complaint, Prince Payne simply alleges that Tigua has "committed and is continuing to commit unfair or deceptive trade practices" and that Tigua "will continue to use improper methods." Compl. §§ 39–40. Moreover, Prince Payne alleges that Tigua's actions "have an adverse impact on the public interest" and "have the potential for repetition." Compl. §§ 43–44. These allegations are mere recitals of the elements of a SCUTPA claim without allegations of fact to support these legal conclusions and are is insufficient to state a SCUTPA claim.

In its proposed amended complaint, Prince Payne alleges that "[d]efendants' actions have an adverse impact on the public interest, as they involve the conversion and misuse of taxpayer funds on a government project." Proposed Am. Compl. ¶ 48. Despite this allegation, the exhibits to the proposed amended complaint demonstrate that Tigua paid Restoration Specialists, who failed to pay Prince Payne. Indeed, Prince Payne does

not dispute that this is what happened. Therefore, the exhibits to the proposed amended complaint directly contradict that allegation that this dispute involves the misuse of taxpayer funds, making it impossible for the court to accept this allegation as true. In addition, Prince Payne still fails to include any allegations to show that Tigua's actions have a potential for repetition.

Moreover, "[b]ecause only unfair acts that adversely affect the public interest give rise to liability under the SCUTPA, a deliberate or intentional breach of contract, without more, does not constitute a violation of the SCUTPA." Bessinger v. Food Lion, Inc., 305 F. Supp. 2d 574, 581 (D.S.C. 2003), aff'd sub nom. Bessinger v. Food Lion, LLC, 115 F. App'x 636 (4th Cir. 2004). Indeed, "conduct that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim." Id. Neither Prince Payne's original or proposed amended complaint allege that this dispute is anything more than an alleged breach of contract. There are no factual allegations that Tigua has engaged in improper conduct with any party other than Prince Payne. As such, the court dismisses Prince Payne's SCUTPA claim and denies leave to amend the claim.

**E. Fraud**

Finally, Prince Payne seeks to add a new cause of action in its proposed amended complaint—fraud. Prince Payne alleges that Tigua made material misrepresentations of material fact when it told Tigua that it would pay Prince Payne and Restoration Specialists by joint check. Prince Payne allegedly worked on the project with the expectation that it would receive payment, and Tigua allegedly did not intend and failed to pay Prince Payne by joint check.

13

Tigua argues that allowing Prince Payne to add this claim would be futile because Prince Payne has not pled its fraud claim with particularity as required by Rule 9(b), and that regardless, the fraud claim is premised on the joint check agreement that Tigua did not sign. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)). Tigua argues that Prince Payne has failed to meet this standard because it did not sign the joint check agreement and Prince Payne has otherwise failed to plead these requirements. Indeed, the only basis for the fraud claim is the joint check agreement, and the agreement is not dated nor signed by Tigua. As such, this claim has not been stated with sufficient particularity, and the court denies leave for Prince Payne to add this claim to its complaint.

In sum, all of the claims in Prince Payne's original complaint must be dismissed. The only claim for which amendment would not be futile is Prince Payne's claim for a violation of the Miller Act. Therefore, the court permits Prince Payne file its proposed amended complaint with the Miller Act claim only. Prince Payne shall not include any additional allegations or causes of actions in its amended complaint. In other words, Prince Payne's amended complaint shall only include its proposed amended Miller Act claim as the claim was presented to the court.

## IV. CONCLUSION

For the reasons set forth above, the court grants the motion to dismiss but permits Prince Payne to file an amended complaint in accordance with this order within 14 days of this order.

**AND IT IS SO ORDERED.**

                                                  **DAVID C. NORTON**
                                                  **UNITED STATES DISTRICT JUDGE**

**October 22, 2019**
**Charleston, South Carolina**