# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| PRINCE PAYNE ENTERPRISES, INC., ) <br> United States for the Use and Benefit of ) <br> Prince Payne Enterprises, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> TIGUA ENTERPRISES, INC. and ) <br> RESTORATION SPECIALISTS LLC, ) <br> ) <br> Defendants. ) <br> _____) | No. 2:18-cv-2552-DCN <br><br> **ORDER** |

The following matter is before the court on defendant Tigua Enterprises, Inc.'s ("Tigua") motion for summary judgment, ECF No. 50. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

Tigua entered into a contract with the United States Department of State to perform certain operations and maintenance services to the United States Department of State's site in North Charleston, South Carolina. ECF No. 50-4, Declaration of Neil Butler ("Butler Decl.") ¶ 4. Tigua subcontracted with defendant Restoration Specialists LLC ("Restoration Specialists") to repair the coping cap on Building E ("Building E Project") and to perform construction and renovation services on Building D ("Building D Project"). Id. Restoration Specialists then subcontracted portions of its work to Prince Payne. Id. There is a joint check agreement dated December __, 2016[1] that states that Tigua and Restoration Specialists entered a subcontract, that Restoration Specialists and

---
[1] The parties left the day blank on the agreement.

1

Prince Payne entered a subcontract, and that Restoration Specialists and Tigua would pay Prince Payne through joint checks payable to Restoration Specialists and Prince Payne. ECF No. 40-4 at 2. However, the agreement is only signed by Restoration Specialists and Prince Payne, and the space for Tigua's signature is blank. Id. at 3.

The evidence submitted by the parties is scarce; therefore, the court describes the entirety of the evidence before it. Prince Payne sent what appears to be its first invoice to Restoration Specialists on February 1, 2017 for $2,526.00 for the Building E Project ("February 1, 2017 invoice"). ECF No. 50-5 at 1. Prince Payne sent another invoice for $29,098.00 to Restoration Specialists for the Building E Project on May 31, 2017 ("May 31, 2017 invoice"). ECF No. 40-5 at 2. Prince Payne's third invoice to Restoration Specialists, dated June 6, 2017, was for "Change Order # 1 DOS Phase 8" and amounted to $25,314.00 ("June 6, 2017 invoice"). ECF No. 62-1 at 5. Prince Payne sent a fourth invoice for $21,135.75 to Restoration Specialists for the Building D Project on September 1, 2017 ("September 1, 2017 invoice"). ECF No. 40-5 at 3. Prince Payne's final invoice to Restoration Specialists, dated October 30, 2017, was for the Building D Project and amounted to $2,400.00 ("October 30, 2017 invoice"). ECF No. 62-1 at 2.

A change order to increase the sum of the subcontract between Restoration Specialists and Prince Payne was issued on October 3, 2017 ("October 2017 change order"). ECF No. 50-2 at 2. The October 2017 change order includes the original "Subcontract Sum," the "net change by previously authorized Change Orders," the "Subcontract Sum prior to this Change Order," the amount by which the change order increases the Subcontract Sum, and "the new Subcontract Sum including this Change Order." Id. The October 2017 change order then notes that the "Subcontract Time will

2

be increased by Zero (0) days" and leaves blank the date of Substantial Completion. However, the change order states that it is not valid until it is signed by the subcontractor (Prince Payne), the contractor (Restoration Specialists) and the owner of the project, presumably the Department of State. Id. The October 2017 change order was only signed by Prince Payne and Restoration Specialists, meaning that it is missing the owner's signature.

On November 17, 2017, Kenneth Prince, the owner of Prince Payne, sent a letter to Sam Hudgins at the Department of State noting that it had issued four invoices to Restoration Specialists for which Prince Payne had not been paid: the May 31, 2017 invoice, the June 6, 2017 invoice, the September 1, 2017 invoice, and the October 30, 2017 invoice.[2] ECF No. 62-1 at 4. The letter does not demand payment or request help in obtaining payment from Restoration Specialists. Instead, it states "To Whom It May Concern, Prince Payne Enterprises has issued invoices to be paid on work that has been completed for the Department of State through Restoration Specialist [sic] and have not [sic] been paid for. The follow are invoices and the amounts that are delinquent." Id. Mr. Prince lists the four invoices and concludes by saying "Thank You, If you have any questions please feel free to contact Prince Payne Enterprises Roofing and Construction at 843-771-0430." Id. Then on November 20, 2017, Prince Payne forwarded the letter and four invoices to Neil Butler, the Project Manager for Tigua at the Department of State site, in an email with no text in the body of the email. ECF No. 62-1 at 1.

On December 13, 2017, Mr. Butler emailed Mr. Prince stating that "[w]e need to enter into a service agreement in order for me to get you paid. We need to get your

---

[2] The February 1, 2017 invoice was not included in this letter.

passed [sic] due money as well as talk about any future Phases and payments." ECF No. 62-2 at 6. Tigua explains that "Phases" referred to how the Department of State project was divided. Mr. Butler continued, stating that "[t]he first thing we need is COI and W-9" and provided Tigua's address for the COI. Id. Mr. Prince responded with a copy of Prince Payne's W-9 and let Mr. Butler know that the COI would be sent shortly. Id. at 5. He also told Mr. Butler to "[l]et me know what else I can do to help speed the payment process." Id. Mr. Butler responded with a "thanks." Id.

Later that day, Mr. Prince followed up to see if Mr. Butler received the COI and W-9. Id. at 4. Mr. Butler appears to have not responded because Mr. Prince followed up again the next day, asking "[d]id you receive the necessary paperwork to be able to process a payment to our office?" Id. Mr. Butler responded, stating that he was "going through your paper work pertaining to phases 10–15." Id. at 3. He stated that he "would like to keep this total separate from the past amount due in 1–9" and "would like to verify that we are on the same page in terms of $ for the additional phases." Id. As this email reflects, and as Tigua explains, Phases 1–9 were complete as of the time of this email, i.e., December 2017, and Phases 10–15 had yet to begin. Mr. Butler further explained that the parties would need to enter into an agreement that reflected the amount that had been quoted and funded and would then need "a separate check and agreement for the past due amounts." Id. Mr. Butler asked Mr. Prince to review the amounts for phases 10–15. Id. The next email in the chain is from someone named Michelle who appears to work at Prince Payne. Id. at 2. She asked Mr. Butler to send her "the lady in your office name and email address [sic] you want me to CC the estimates and invoices to." Id. Mr. Butler then emailed someone named Donna and told her that he was working with Mr.

4

Prince to get his vendor set up for Phases 10–15, that Mr. Butler was missing some of Mr. Prince's quotes, and asking Donna to help capture all of the quotes.  Id.  The next email in the chain appears to be someone from Prince Payne sending three quotes to Mr. Butler.  Id. at 1.  All three quotes, dated July 19, 2017, are for Phase 13 of the project.  Id. at 8–10.

On February 28, 2018, Mr. Hudgins sent an email addressed to Dennis Schumm and "Mark", who are presumably the points of contact for Restoration Specialists.  ECF No. 40-9 at 2.  Mr. Hudgins notes that Prince Payne has not been paid for its work on Buildings D and E and that the government has paid Tigua and Restoration Specialists.  He asks Restoration Specialists to pay Prince Payne so that the government can release claims for liability of payment.  Mr. Hudgins concludes by stating that if Restoration Specialists did not pay Prince Payne, the government will report Restoration Specialists to the GSA General Contracting Registration, the "SBA" and the "SAM registration" so that Restoration Specialists will no longer be eligible to work on a federal contract again.  Id. at 2.

On March 29, 2018, Tigua's legal counsel sent a letter to Mr. Prince.  ECF No. 40-8 at 2.  She noted that Restoration Specialists owes Prince Payne money and that Tigua had paid Restoration Specialists in full.  She then explained that "Tigua has been fighting on your behalf for the past five (5) months, including demand letters, phone calls, and meetings with representatives of Restoration Specialists" but that it was clear that Restoration Specialists did not intend to pay Prince Payne.  Id.  She noted that Mr. Hudgins was also trying to encourage Restoration Specialists to pay its debt and that she encouraged Prince Payne to pursue payment directly from Restoration Specialists.  She

concluded by saying that "Tigua will assist you in any way that we can as you attempt to collect your debt." Id.

Prince Payne filed its complaint on September 17, 2018 bringing causes of action against Tigua and Restoration Specialists[3] for a violation of the Miller Act, breach of contract, unjust enrichment, and a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). On July 16, 2019, Tigua filed its motion to dismiss. ECF No. 27. After the motion was fully briefed, the court granted Tigua's motion to dismiss but permitted Prince Payne to file an amended complaint with its Miller Act claim. ECF No. 39. Prince Payne filed its amended complaint on November 4, 2019. ECF No. 40. Discovery concluded on December 4, 2019. Then on December 16, 2019, Tigua filed a motion for summary judgment. ECF No. 50. Prince Payne responded on December 30, 2019, ECF No. 57, and Tigua replied on January 6, 2020, ECF No. 59. Then, for reasons explained below and with the court's permission, Prince Payne filed a supplemental response on January 30, 2020, ECF No. 62, and Tigua filed a supplemental reply on February 6, 2020, ECF No. 63. Therefore, the motion is fully briefed and ripe for review.

## II. STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some

---

[3] Restoration Specialists has not entered an appearance in this case and has been placed in default. ECF No. 20. The clerk entered default judgment for a sum certain of $50,632.75 plus interest from the date of judgment, ECF No. 23; however, it appears unlikely that Prince Payne will recover this judgment from Restoration Specialists because Restoration Specialists has been dissolved.

6

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III. DISCUSSION

The court first addresses the issue that necessitated supplemental briefing on this motion. In response to Tigua's motion for summary judgment, Prince Payne argues that summary judgment is inappropriate in part because Tigua had not submitted sufficient discovery responses. At the time of Prince Payne's response, discovery had ended, but a motion to compel filed by Prince Payne on the last day of discovery was pending before the court. The parties resolved the motion to compel without the need for the court to consider the issue, but because Prince Payne received the disputed documents after it filed its response, the court permitted Prince Payne to file a supplemental response addressing the newly received discovery. The court also permitted Tigua to reply to Prince Payne's supplemental response. Therefore, the briefing now accounts for all of the discovery conducted in this case.

Tigua argues that summary judgment is warranted for two reasons. First, Tigua contends that it is entitled to summary judgment because Prince Payne failed to submit a timely, proper notice demanding payment from Tigua within 90 days of last performing any service or tendering any goods on the project, as required by the Miller Act. Second, Tigua argues that Prince Payne's claim is barred by the Miller Act's one-year statute of limitations. The court grants summary judgment in favor of Tigua because the court finds that the evidence cited by Prince Payne does not constitute adequate notice under the Miller Act.

**A. Notice of Payment**

Tigua first argues that summary judgment is warranted because Prince Payne did not provide timely and proper notice to Tigua pursuant to the requirements of the Miller Act. The Miller Act provides:

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.

40 U.S.C. § 3133(b)(2). As an initial matter, this language in the Miller Act reads as though the requirements apply to the civil action filed by the plaintiff, not the notice demanding payment that the plaintiff must send. However, courts have interpreted the legislative history and amendments made to the Miller Act to find that despite the statutory language, these requirements apply to both notice and civil actions. See Trustees of Heating, Piping & Refrigeration Pension Fund v. Milestone Const. Servs., Inc., 991 F. Supp. 2d 713, 718 (D. Md. 2014); AMEC Env't & Infrastructure, Inc. v. Structural Assocs., Inc., 2014 WL 1379519, at *3 (E.D.N.C. Apr. 8, 2014).

8

The Fourth Circuit has explained that "[w]hile the [Miller Act] as a whole is designed to afford additional protection to subcontractors, the notice requirements aim to protect the general contractor." CTI/DC, Inc. v. Selective Ins. Co. of Am., 392 F.3d 114, 119 (4th Cir. 2004). "[A]lthough courts liberally interpret the Federal Miller Act's requirements concerning the method by which such notice is given, the rules regarding the contents of such notice are more rigidly applied." Id.

The Miller Act requires that the notice must be provided "within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made" and "must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." 40 U.S.C. § 3133(b)(2); see also Trustees of Heating, Piping & Refrigeration Pension Fund v. Milestone Const. Servs., Inc., 991 F. Supp. 2d 713, 718 (D. Md. 2014) ("Traditionally, courts have held that in order to satisfy the notice requirement of the Miller Act any notice must satisfy three requirements: (1) notice must be given within 90 days of the subcontractor's last work; (2) the notice must stat[e] with substantial accuracy the amount claimed; and (3) the notice must include the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.'" (internal quotations omitted)). Moreover, the Miller Act "does not expressly require a demand that the general contractor pay," but "courts have consistently . . . held that the written notice and accompanying oral statements must inform the general contractor, expressly or impliedly, that the supplier is looking to the general contractor for payment so that it plainly appears that the nature and state of the indebtedness was brought home to the

<mark>9</mark>

general contractor." U.S. for Use & Ben. of Water Works Supply Corp. v. George Hyman Const. Co., 131 F.3d 28, 32 (1st Cir. 1997) (internal quotations omitted). The Fourth Circuit adheres to this interpretation of the Miller Act. See U.S. for Use & Benefit of Henry Walke Co. v. Van de Riet, 316 F.2d 912, 916 (4th Cir. 1963) (finding a letter to be insufficient notice under the Miller Act because the letter was never intended as an assertion of a claim upon payment bond). Therefore, if a notice "does not assert a claim [or] . . . advise, expressly or by implication, that the supplier if looking to the contractor for payment of the subcontractor's bills," then the notice does not comply with the Miller Act as a matter of law, and the Miller Act claim cannot survive. U. S. for Use & Benefit of Noland Co. v. Skinner & Ruddock, Inc., 164 F. Supp. 616, 621 (E.D.S.C. 1958).

In order to determine if Prince Payne gave proper notice to Tigua, the court must first determine when Prince Payne last performed work and whether it gave notice within 90 days of that date. The court must then determine whether the notice was adequate. Beginning with the 90-day requirement, Prince Payne argues that it properly demanded payment within 90 days of its last performed work in accordance with the Miller Act because it last performed work in October 2017 and demanded payment from Tigua beginning in November 2017. Prince Payne relies only on the October 2017 change order as evidence of the date it last performed work.[4] Tigua argues that the October 2017 change order is not valid on its face, and that the only evidence of the date of Prince

---

[4] Tigua notes that the October 2017 change order was not attached or incorporated to Prince Payne's response or supplemental response. However, Rule 56 specifically permits the court to consider other materials in the record beyond those that are cited by the parties. Fed. R. Civ. P. 56(c)(3). Therefore, the court can and will consider the change order.

Payne's last work is the February 1, 2017 invoice, which reflects Prince Payne completing its work on Building E on that date.

Accordingly, the court must determine if there is a genuine issue of material fact as to when Prince Payne completed its work. There are only two documents in the record that could have a bearing on the date on which Prince Payne completed its work: the February 1, 2017 invoice and the October 2017 change order. Neither of these documents actually reflect Prince Payne's date of completed work. The February 1, 2017 invoice from Prince Payne to Restoration Specialists states that the invoice is for "Dept. of State Building E Office Addition," and the description of work is "Final Draw: Completion of Contract." ECF No. 50-5 at 1. This description suggests that Prince Payne completed work on Building E on February 1, 2017. However, Prince Payne issued another invoice for Building E on May 31, 2017, suggesting that Prince Payne was continuing to work on Building E after February 1, 2017. ECF No. 40-5 at 2. Because the court must draw all inferences in favor of Prince Payne, the non-movant, the court cannot say for certain that the February 2017 invoice shows that Prince Payne's work on Building E ended in February 2017.

Turning to the October 2017 change order, there are several issues with this document being used to evince the date of Prince Payne's last work. First, as discussed above, the change order specifically states that it is not valid unless the owner signs the order, and the owner did not sign it. Therefore, the October 2017 change order is not valid on its face. Moreover, October 2017 change order only states that the amount Prince Payne was to be paid under the subcontract was to increase. There is no mention of whether Prince Payne was continuing to do work. Instead, the October 2017 change

order simply indicates that Prince Payne was to be paid more money. That payment could have been for work that Prince Payne had already completed prior to October 3, 2017. In fact, the October 2017 change order states that the "Subcontract Time will be increased by Zero (0) days" and leaves blank the date of Substantial Completion, suggesting that Prince Payne was not continuing to work. ECF No. 40-6 at 2. Moreover, Prince Payne submitted no affidavits, deposition testimony, or any other evidence to explain if and how the October 2017 change order means that Prince Payne was in fact still completing work or to generally show that Prince Payne's work ended in October 2017. Even drawing all inferences in favor of Prince Payne, the October 2017 change order does not show that Prince Payne was conducting work through October 2017.

Therefore, the court is left with no evidence that definitively establishes when Prince Payne last completed work. Why this information was not elicited during a deposition or why the parties seem to have no clear evidence of the completion date of Prince Payne's work is a bit baffling. However, without any such evidence, the court is unable to determine, based on the evidence before it, when Prince Payne's work was completed.

Nevertheless, the court finds that summary judgment in favor of Tigua is warranted because even if Prince Payne's work concluded in October 2017, Prince Payne did not provide adequate notice to Tigua. Prince Payne relies on three communications as its notice: an email dated November 20, 2017 from Prince Payne to Neil Butler, ECF No. 62-1; an email chain from December 2017 between Prince Payne and Mr. Butler, ECF No. 62-2; and the March 29, 2018 from Tigua's legal counsel. ECF No. 40-8. Beginning with the November 20, 2017 email, the subject of the email is "Fwd:

Outstanding Invoices from Prince Payne Enterprises." ECF No. 62-1 at 1. There is no text in the body of the email, but attached to the email are four invoices to Restoration Specialists and the November 17, 2017 letter from Mr. Prince to Mr. Hudgins that informs the Department of State that Prince Payne was not paid for those invoices. The court finds this email to be insufficient notice because it contains no express demand for payment nor does it express any intent to file a bond claim, as required by the Miller Act. While a demand for payment in a Miller Act notice may be implied, there is simply no evidence before the court that Prince Payne sent these invoices to Tigua in order to look for payment from Tigua. An email with no body that simply forwards invoices cannot be said to make it "plainly appear[ ] that the nature and state of the indebtedness was brought home to the general contractor." U.S. for Use & Ben. of Water Works Supply Corp., 131 F.3d at 32. As such, this email with no content that forwards Prince Payne's invoices to Tigua is not adequate notice under the Miller Act.

The December 2017 email chain is also insufficient notice under the Miller Act. The email chain does not "state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." 40 U.S.C. § 3133(b)(2). There is no mention of Restoration Specialists nor does the email state any amount of money that is owed. Based on the substance of the email and the limited context provided by the parties, the email chain appears to primarily discuss Tigua's desire to retain Prince Payne to work on later Phases of the project, which is unrelated to the work that Prince Payne had previously completed for Restoration Specialists. Prince Payne claims that it "sent Tigua an email with invoice estimates showing specific work Prince Payne performed, and in specific amounts," ECF

13

No. 62 at 2, but it is clear from the face of those invoices that they are estimates for Phase 13, which had not yet been completed as of December 2017. ECF No. 62-2 at 8–10. They are not estimates for the cost of the work that Prince Payne had already completed for Restoration Specialists. Moreover, like the November 2017 email, there is no express or implied demand for payment of Prince Payne's invoices in this email chain. Therefore, the December 2017 email chain does not constitute adequate notice under the Miller Act.

Finally, in the March 29, 2018 letter, Tigua stated that it "has been fighting on your behalf for the past five (5) months, including demand letters, phone calls, and meetings with representatives of Restoration Specialists." Id. at 2. However, all that this shows is that Tigua knew that Restoration Specialists owed money to Prince Payne and that Tigua had been trying to help Prince Payne get paid. There is nothing in this letter to suggest that Prince Payne had provided notice to Tigua that Prince Payne sought payment from Tigua, as opposed to Restoration Specialists. Finally, the letter itself is clearly not adequate notice as it is a letter from Tigua, not a notice of demand of payment from Prince Payne. Accordingly, this letter and its reference to Tigua's efforts to help Prince Payne are not adequate notice under the Miller Act.

In sum, the court finds that Prince Payne failed to provide adequate notice to Tigua as required by the Miller Act, meaning that summary judgment in favor of Tigua is warranted.

### B. Statute of Limitations

Tigua also argues that summary judgment is warranted because Prince Payne filed its Miller Act claim more than a year after Prince Payne completed its work. The Miller

Act has a one-year statute of limitations, requiring a plaintiff to initiate an action no later than a year after the day on which the last labor was performed by the plaintiff. 40 U.S.C. § 3133(b)(4). Oddly, Prince Payne does not respond to this argument in its response or supplemental response; however, based on Prince Payne's general contention that it last performed work in October 2017 and the fact that Prince Payne filed suit in September 2018, the court presumes that Prince Payne believes that it filed suit within the one-year statute of limitations.

As discussed above, Prince Payne's sole piece of evidence for its contention that it last performed work in October 2017 is the October 2017 change order. Also discussed above, the court finds that the change order does not actually evince October 2017 as the date of Prince Payne's last completed work. The same is true for Tigua's argument that the February 1, 2017 invoice shows that Tigua finished its work on the Building E Project in February 2017, as the invoice does not evince Prince Payne's completion date of the Building E Project as February 2017. There is no other evidence in the record indicating when Prince Payne finished work. Therefore, the court is simply unable to determine if Prince Payne's claim is barred by the statute of limitations.

## IV. CONCLUSION

For the reasons set forth above, the court grants Tigua's motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 26, 2020
Charleston, South Carolina**